**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**WILLIAM F. SANFORD,**
**Individually and as Executor of the Estate**
**of GERLINDE ULM SANFORD, Deceased,**

**Plaintiff,**

**vs.**                                                        **5:12-CV-1254**
                                                               **(MAD/TWD)**

**TIAA-CREF INDIVIDUAL & INSTITUTIONAL**
**SERVICES, LLC, GERD SCHNEIDER, and**
**GEORGIA SCHNEIDER,**

**Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF ROBIN L. ROBERTS**           **ROBIN L. ROBERTS, ESQ.**
P.O. Box 1953
307 West Pine Street (39401)
Hattiesburg, Mississippi 39403
Attorneys for Plaintiff

**MCPHILLIPS, FITZGERALD LAW FIRM**      **JASON T. BRITT, ESQ.**
288 Glen Street
P.O. Box 299
Glens Falls, New York 12801
Attorneys for Plaintiff

**MACKENZIE, HUGHES LAW FIRM**           **STEPHEN T. HELMER, ESQ.**
101 South Salina Street                  **WILLIAM B. HUNT, ESQ.**
Syracuse, New York 13202
Attorneys for Defendant TIAA-CREF

**BOND, SCHOENECK LAW FIRM**             **KATE I. REID, ESQ.**
One Lincoln Center                       **SUZANNE O. GALBATO, ESQ.**
Syracuse, New York 13202                 **SUZANNE M. MESSER, ESQ.**
Attorneys for Defendants Gerd Schneider
and Georgia Schneider

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

This case involves a dispute over the proper beneficiary of a decedent's retirement benefit under the Employment Retirement Income Security Act ("ERISA").

On April 27, 2011, Plaintiffs William F. Sanford, individually and as Executor of the Estate of Gerlinde Ulm Sanford commenced an action against Defendant TIAA-CREF Individual & Institutional Services, LLC ("TIAA-CREF") in the Chancery Court of Lamar County, Mississippi, alleging a variety of state causes of action stemming from the disbursement of the decedent's retirement savings accounts.  On May 31, 2011, TIAA-CREF removed the action to the United States District Court for the Southern District of Mississippi, where it moved to dismiss the action.

By Memorandum Opinion and Order dated February 24, 2012, the District Court, Judge Starrett presiding, dismissed the complaint with prejudice on the grounds that all of Plaintiff's claims were preempted by ERISA, and provided Plaintiff ten days to seek leave to file an amended complaint.  Plaintiff complied, was granted leave, and filed an amended complaint alleging violations of ERISA against TIAA-CREF and adding Defendants Gerd and Georgia Schneider (the "Schneiders") against whom Plaintiff alleges various common-law causes of action.

The Schneiders, residents of New York, made a pre-answer motion to dismiss on the grounds that the Court lacked personal jurisdiction, prompting Plaintiff to move to change venue to the Northern District of New York.  On August 7, 2012, Judge Starrett found that the Court lacked personal jurisdiction over the Schneiders and transferred the case to this Court.  *See* Dkt. No. 71.

There are four motions presently before the Court. First, the Schneiders move to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 83, 90, 91. Second, TIAA-CREF moves for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 99, 103, 104, 107. The Schneiders join that motion, arguing that the Court should decline to exercise supplemental jurisdiction if it grants TIAA-CREF's motion for summary judgment. *See* Dkt. No. 103. Third, Plaintiff moves to have certain medical records considered by the Court and for leave to conduct certain discovery. *See* Dkt. Nos. 108, 112, 113, 114. Finally, Plaintiff moves for summary judgment against TIAA-CREF. *See* Dkt. Nos. 120-23, 125-28.[1]

## II. BACKGROUND[2]

### A.    Relevant facts

Plaintiff William F. Sanford is the husband of the deceased, Gerlinde Ulm Sanford, and the executor of her estate. *See* Dkt. No. 56, Administrative Record, hereinafter "R.," at 382. Gerlinde Ulm Sanford was employed by Syracuse University ("SU") and a participant in two SU retirement plans that were managed by TIAA-CREF. *See* R. at 281, 313-316. Both plans are

---

[1] Plaintiff filed both a notice of motion for summary judgment and a notice of cross-motion for summary judgment, relying on the same papers. See Dkt. Nos. 120, 123. The Court considers them as one cross-motion for summary judgment.

[2] Plaintiff failed to file a response to Defendant TIAA-CREF's statement of undisputed facts as required by Local Rule 7.1. As such, the Court accepts as true the factual allegations in TIAA-CREF's statement to the extent that they are supported by the record and not otherwise contested by Plaintiff's own statement of undisputed facts submitted in support of Plaintiff's cross-motion. *See Alzawahra v. Albany Medcal Ctr.*, ___ Fed. Appx. ___, 2013 WL 6284286, *1-*2 (2d Cir. 2013); *see also* Dkt. No. 125.

subject to ERISA.  *See* R. at 1-116; *see also Sanford v. TIAA-CREF Individual & Institutional Services, LLC*, No. 2:11-CV-122-KS-MTP, 2012 WL 627994 (S.D. Miss. Feb. 24, 2012).  At the time of enrollment, Gerlinde Ulm Sanford designated her husband, William F. Sanford, as the sole primary beneficiary on both accounts.  *See* R. at 194-95, 281.

William F. Sanford and Gerlinde Ulm Sanford were married in 1967, but had lived apart for many years.  *See* Dkt. No. 41 at ¶ 11; R. at 282.  Despite their physical separation, the parties remained married at the time of decedent's death.  *See* Dkt. No. 41 at ¶ 7.[3]  In 2008, Gerlinde Ulm Sanford met with her TIAA-CREF Wealth Management Advisor Michael Graves where they discussed, among other things, changing the beneficiaries on her accounts.  *See* R. at 382-83 (report of Michael Graves).  The report submitted by Mr. Graves indicates that she requested information about removing her husband as a beneficiary at an April 30, 2008 meeting.  *See id.* Mr. Graves told her that she could reduce his allotment to 50% but could not reduce it further without consent or divorce.  *See id.*  They met again on July 8, 2008 and discussed changing her beneficiaries.  *See id.*

On April 22, 2010, Gerlinde Ulm Sanford was hospitalized with highly metastatic cancer. *See* Dkt. No. 129 at 7.[4]  On April 26, 2010, Gerlinde Ulm Sanford executed a Power of Attorney New York Statutory Short Form "POA", designating Defendants Gerd Schneider and Georgia Schneider as her attorneys-in-fact.  *See* R. at 320-29; *see also* Dkt. No. 129 at 12 (nurse's note of

---

[3] William F. Sanford obtained a divorce in the Chancery Court of Lamar County, State of Mississippi in 1997, which was overturned on appeal.  *See Sanford v. Sanford*, 749 So.2d 353 (Miss. App. 1999).

[4] The parties dispute whether the Court should consider the deceased's medical records. *See* Dkt. Nos. 108, 112.  In the context of a motion for summary judgment, there is no reason that the Court cannot consider the documents.  Whether the Court can rely on the medical records in reviewing TIAA-CREF's decision to accept the change in beneficiaries is discussed below.

April 26, 2010 at 10:00 a.m., stating that Gerd Schneider was meeting with an attorney to obtain a POA). The POA contains a major gifts rider with the following express modification: "This power of attorney specifically authorizes my agents to change the beneficiary named on my TIAA-CREF account." *See* R. at 327. The POA is dated, notarized, and witnessed (by two employees of the hospital) April 26, 2010, but bears a stamp which appears to read: "TIAA-CREF Syracuse, New York 2010 Apr 24 A 9:38." *See* R. at 321.

On April 27, 2010, the Schneiders executed a change of beneficiary form, signing as agents for Gerlinde Ulm Sanford. *See* R. at 336, 342-48. The form appears to be the document drafted by TIAA-CREF for the purpose of changing beneficiaries. *See id.* The form bears a stamp which reads "TIAA-CREF Syracuse, New York 2010 Apr 27 A 9:49." *See* R. at 342. The form lists five beneficiaries: William F. Sanford, Helga Meiler, Edith Kostler, Wolfgang Ulm and Gertrude Hildebrand. *See* R. at 343-44. William F. Sanford is listed as a primary beneficiary, identified as spouse, and allotted 50% of the accounts. *See* R. at 342. Helga Meiler, Edith Kostler, and Wolfgang Ulm are listed as primary beneficiaries, identified as siblings, and each allotted 12.5% of the accounts. *See* R. at 342-43. For each of these three individuals, an allotment of 16.3% of the accounts appears in the proper space, is struck out, and the notation "12.5%" is made in the margin with the initials "GKS." *See id.* Gertrude Hildebrand is listed as a contingent beneficiary, identified as a sibling, and allotted 12.5% of the accounts. *See* R. at 343. Both Gerd and Georgia Schneider signed the form. *See* R. at 345.

Gerlinde Ulm Sanford died on April 27, 2010 at 1:30 PM. *See* R. at 331 (death certificate). On May 7, 2010, TIAA-CREF, apparently unaware of the decedent's passing, sent her a letter rejecting the change in beneficiaries on the grounds that the "allocations for [her] primary and contingent beneficiary(ies) do not equal 100%." See R. at 391. The letter also stated

that "[t]he beneficiary designation we currently have on file will remain in effect until we receive the requested information." *See id.* On May 8, 2010, TIAA-CREF reversed its decision and a "legal review" was undertaken to see whether the designation showed the intent to distribute 50% to William Sanford and 12.5% each to the four siblings. *See* R. at 447, 449-50. TIAA-CREF also sent notices to the decedent dated May 10, 2011 stating that Gerd and Georgia Schneider had been designated as "authorized part[ies]" on her TIAA-CREF accounts with "full power of attorney/fiduciary rights." *See* R. at 396-97.

By letter dated May 11, 2010, Plaintiff's then counsel Warren Bader wrote to TIAA-CREF, enclosing the death certificate and requesting as follows: "Kindly forward the appropriate claimant's statement to this office to the attention of the undersigned, together with a list of options so that we may be in a position to properly advise the decedent's surviving spouse." *See* R. at 379. On May 19, 2010, TIAA-CREF responded to this letter stating that it could only release information to the designated beneficiaries. *See* R. at 461. This was apparently a form letter sent on the mistaken belief that Mr. Bader represented only the decedent's estate. *See* R. at 480 (e-mail from Matthew Kohlrus sent August 11, 2010).

On June 8, 2010, William Sanford faxed a copy of Letters of Administration to TIAA-CREF employee Matthew Kohlrus. *See* R. at 462-63. Sometime between June 8, 2010 and July 2, 2010, William Sanford spoke to Matthew Kohlrus. Based on Mr. Kohlrus' notes from that conversation, William Sanford expressed concerns about the POA and the designation but was unsure as to whether he would challenge the decision to accept the designation. *See* R. at 480-481. Mr. Kohlrus told Mr. Sanford that any challenge would have to come in writing. *See id.*

On July 2, 2010, William Bader wrote to TIAA-CREF. *See* R. at 464. His letter referenced the May 19, 2010 letter, expressed confusion as to how there was a change in

beneficiaries, requested that TIAA-CREF put a hold on the matter, and threatened future litigation. *See id.*

On August 19, 2010, William Bader wrote to Margaret Burns, an attorney in TIAA-CREF's legal department. *See* R. at 504. Mr. Bader's brief letter addresses only the issues of whether the beneficiary designation added up to 100% and whether the beneficiary designation was made after the decedent's death (at which point the POA would have been without effect). *See id.* Mr. Bader again alluded to future litigation.

On August 26, 2010, William Bader and Margaret Burns spoke on the phone about the state of the decedent's accounts. *See* R. at 531. Ms. Burns' notes indicate that Mr. Bader expressed concern about the execution of the POA at the hospital at a time when "the deceased had difficulty moving her arm and had some days earlier been confused." *See id.* Mr. Bader stated that he had to consult with William Sanford to determine whether he would challenge the matter. *See id.*

On September 2, 2010, Margaret Burns e-mailed William Bader, writing: "I am following up on our conversation of 8/26 to see if you have a decision yet on how your client will proceed." *See* R. at 526. Mr. Bader responded by e-mail as follows: "Margaret . . . just got off the phone with the surviving spouse and he wants me to do more 'due diligence' . . . specifically he wants to know whether a certificate of incumbency was file [sic] with TIAA-CREF stating that the P/O/A was in full force and effect? please advise . . . thank you . . . warren." *See id.* (ellipses and quotations in original).

There is no evidence of further communication between the parties. On September 28, 2010, TIAA-CREF sent a letter to William Bader that reads as follows:

> After we received notification of Ms. Sanford's passing and
> a copy of a Letter of Appointment naming her surviving spouse,

William Sanford, as the executor of her estate we have been in contact with you regarding a possible contest to the beneficiary designation of her accounts naming individuals other than Mr. Sanford to 50% of these assets. We initially received notice of a possible challenge on July 6. After subsequent conversations between yourself and our legal department this file has remaining [sic] open since August 19. This time has been afforded to allow your client a chance to make a claim to the portion of Ms. Sanford's TIAA-CREF accounts he is not entitled to, as per her most recently approved beneficiary designation. Please note that in the absence of documentation to the contrary we must conclude that the materials received from Ms. Sanford's power of attorneys reflect her intent. At this time we must move forward to pay the beneficiaries of record their entitlement to these accounts in accordance with the change of beneficiary request received on April 27, 2010.

## B.     Relevant provisions

As discussed, Gerlinde Ulm Sanford was a participant in two SU retirement plans that were managed by TIAA-CREF. *See* R. at 313-16. One of the retirement plans is a noncontributory plan (the "Syracuse University TIAA-CREF Noncontributory Retirement Plan"). *See id.* at 3. This plan provides benefits resulting from "contributions made by the University." *See id.* at 4. The other plan is a voluntary contribution plan (the "Syracuse University TIAA-CREF Voluntary Tax-Deferred Annuity Plan"). R. at 59. This plan provides benefits resulting from "contributions made by the University pursuant to salary reduction agreements between the University and Participants." *See id.* at 62.

TIAA-CREF issues annuities to plan participants and provides the investment accounts into which contributions to the plans are deposited. *See id.* at 11, 66. TIAA-CREF manages and maintains the accounts. *See id.* at 14-32, 69-92.

Regarding the designation of beneficiaries, the plans provide the following language: "Each participant may designate one or more Beneficiaries and contingent Beneficiaries **in the manner acceptable to TIAA-CREF**." R. at 28, 84 (emphasis added). Similarly, the annuity

contracts issued by TIAA-CREF to Ms. Sanford provided that she may change her beneficiaries by providing notice "in form and wording satisfactory to [TIAA-CREF]." *Id.* at 160 (§ 9); *see also id.* at 191 (§ 9). Moreover the annuity contracts provide that a change in beneficiaries is effective "as of the date the notice was signed, whether or not the Annuitant is living at the time of such receipt [of the notice by TIAA-CREF]." R. at 161, 193.

The plans provide that "[t]he designation of a Beneficiary other than a Spouse (where applicable) shall require spousal consent in accordance with Paragraph 6.02." R. at 28, 84. Paragraph 6.02 of the plans, entitled "Spouse's Rights", provides as follows:

> The Spouse shall be the Participant's Beneficiary for 50% of the value of each applicable Investment Account, whether or not designated as such, unless one of the following requirements in subparagraphs (a) through (d) below is satisfied.
>
> (a) Spouse's Consent to the Beneficiary: The Participant designates a different Beneficiary and the Spouse waives the right to be the Beneficiary in a consent that meets the requirements of subparagraph (e). In this regard:
>
> (i) The Participant must designate a specific Beneficiary that cannot be changed without a new spousal consent.
>
> (ii) Notwithstanding subparagraph (i) above, the Participant may at any time revoke the designation of a non-spouse Beneficiary and restore the Spouse as Beneficiary, without spousal consent.

*Id.*

## C. The pending motions

In their motion to dismiss, the Schneiders argue that Plaintiff has failed to plead the necessary elements for both the breach of fiduciary duty and negligence claims. *See* Dkt. No. 83-

1 at 7.  Specifically, they assert that both claims required that Plaintiff plead that the Schneiders owed him a duty, which Plaintiff have failed to do.  *See id.* at 7-8.  Further, the Schneiders argue that the fraud claim must be dismissed because Plaintiff failed to allege a material misrepresentation of fact, that Plaintiff relied on that misrepresentation, and that such reliance was reasonable.  *See id.* at 9-10.  Next, the Schneiders contend that Plaintiff's intentional and negligent infliction of emotional distress claims must fail because the complaint is devoid of any allegations of "'outrageous', 'atrocious' or 'intolerable' conduct on the part of the Schneiders" and because there is no allegation that the Schneiders' conduct "unreasonably endangered the plaintiff's physical safety."  *Id.* at 12 (citations omitted).  Finally, the Schneiders contend that the Court must dismiss Plaintiff's conversion claim because "Plaintiff's allegations regarding the $5,000 check are insufficiently pled" and "Plaintiff's interest in Ms. Sanford's retirement account was contingent and insufficient to support a cause of action for conversion."  *Id.* at 13-15.

In its motion for summary judgment, TIAA-CREF argues that the decision to accept Ms. Sanford's change of beneficiary form is entitled to deferential, arbitrary and capricious review.  *See* Dkt. No. 99-1 at 11-12.  Specifically, they assert that the language in the plans give TIAA-CREF discretion to make determinations regarding beneficiary designations, thereby requiring arbitrary and capricious review.  *See id.* at 11.  Next, TIAA-CREF argues that the administrative record contains absolutely no evidence that it abused its discretion and, in light of the discretionary standard applicable to this case, Plaintiff may not present evidence outside of the administrative record.  *See id.* at 13-14.  The Schneiders join TIAA-CREF's motion, asking that the Court decline to exercise supplemental jurisdiction over the claims against them if it grants TIAA-CREF's motion for summary judgment as to the ERISA claims.

On May 14, 2013, Plaintiff filed a "motion to admit additional evidence into the record and for discovery." *See* Dkt. No. 108. Plaintiff seeks to have the Court consider the medical records of Gerlinde Ulm Sanford, which he claims "are essential for a complete adjudication of the rights of the parties on the issues of mental capacity and undue influence of Gerlinde Ulm Sanford in order to enter into a power of attorney." Dkt. No. 108-1 at ¶ 1. Further, Plaintiff seeks "to take additional discovery to develop the facts as it relates to the intent of Gerlinde Ulm Sanford and the proper exercise of fiduciary responsibility in denying the claim of William F. Sanford to the benefits of his wife's retirement plan." *See id.* at ¶ 2.

On October 22, 2013, Plaintiff filed a cross-motion for summary judgment. *See* Dkt. No. 122. In his cross-motion, Plaintiff argues that TIAA-CREF's decision was arbitrary and capricious because it was never decided by the proper authority. *See id.* at 8-11. Further, Plaintiff contends TIAA-CREF's decision was arbitrary and capricious because it did not meet the benefits claims procedure. *See id.* at 11-14.

## III. DISCUSSION

### A.  Summary judgment standard

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.    Standard of review of TIAA-CREF's actions**

"[A] denial of benefits challenged under [ERISA § 502(a)(1)(B) ] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If the insurer establishes that it has such discretion, the benefits decision is reviewed under the arbitrary and capricious standard." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). "Ambiguities are construed in favor of the plan beneficiary." *Id.* (citation omitted).

> "A reservation of discretion need not actually use the words 'discretion' or 'deference' to be effective, but it must be clear.

> Examples of such clear language include authorization to 'resolve all disputes and ambiguities,' or make benefits determinations 'in our judgment.' In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does."

*Krauss*, 517 F.3d at 622 (quotations omitted).

In this case, TIAA-CREF argues that the Plan documents expressly confer discretion on it to accept beneficiary designations, thereby requiring the Court to review this matter under the arbitrary and capricious standard. It relies on the provision providing that "[e]ach participant may designate one or more Beneficiaries and contingent Beneficiaries in the manner acceptable to TIAA-CREF." *See* R. at 28, 84. The Court agrees that this provision provides TIAA-CREF with the discretion to determine what constitutes an acceptable beneficiary designation and that arbitrary and capricious review is appropriate.

Plaintiff relies on *Kinstler v. First Reliance Standard Life Ins.*, 181 F.3d 243 (2d Cir. 1999), in support of his position. In *Kinstler*, the court found that the phrase "satisfactory proof of Total Disability to us [the fiduciary]" was an "inadequate way to convey the idea that the plan administrator has discretion." *Id.* at 252. First, the court found that "it is not clear whether the key language, requiring the claimant to 'submit [ ] satisfactory proof of Total Disability to us,' means only that the claimant must submit to First Reliance proof that is satisfactory or that the claimant must submit proof that is satisfactory to First Reliance." *Id.* at 251-52. Since the plan administrator bears the burden of providing that the arbitrary and capricious standard applies, the court held that "this needless ambiguity in the wording of the policy should be resolved against First Reliance." *Id.* at 252. Further, the court noted that "unless a policy makes it explicit that the proof must be satisfactory to the decision-maker, the better reading of 'satisfactory proof' is that it establishes an objective standard, rather than a subjective one." *Id.* (citation omitted). Further,

the court found that the phrase "satisfactory proof" or "proof satisfactory to [the decision-maker]" is insufficient to convey the idea that the plan administrator has discretion. *Id.* As such, the court found that "saying that proof must be satisfactory 'to the administrator' merely states the obvious point that the administrator is the decision-maker, at least in the first instance." *Id.*

Unlike the situation in *Kinstler*, in this case, the language authorizing the participants to change beneficiaries "in the manner acceptable to TIAA-CREF" unambiguously establishes a subjective standard. *See Krauss*, 517 F.3d at 622 (finding deferential review proper where the plan authorized the fiduciary to calculate the benefits in the amount the fiduciary "determine[d] to be the reasonable charge"); *Fay v. Oxford Health Plan*, 287 F.3d 96, 103-04 (2d Cir. 2002) (finding deferential review proper where the plan authorized services that were medically necessary, "as determined by" the fiduciary).

Moreover, the Court finds that cases such as *Kinstler*, which involved a fiduciary's denial of benefits to a plan participant based on a complex factual determination that the participant was not "totally disabled," is distinguishable from the present matter, which involves TIAA-CREF's acceptance of a participant's change of beneficiary form. TIAA-CREF has a standard form used to designate beneficiaries, and this form was used in the present case. *See* R. at 342-348.

Based on the foregoing, the Court finds that TIAA-CREF has established that the plans set forth an unambiguously subjective standard providing it with discretion; and, therefore, they are entitled to arbitrary and capricious review.

**C.     Plaintiff's motion to admit additional evidence into the record and for discovery**

The Court first addresses Plaintiff's motion to admit additional evidence into the record and for discovery. The first part of this motion is, in essence, a request that this Court consider

the medical records of the decedent in conducting a *de novo* review of TIAA-CREF's acceptance

of the beneficiary designation. In light of the Court's determination that the appropriate standard

is arbitrary and capricious, the Court cannot rely on the medical records. *Miller v. United Welfare*

*Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) ("Because district courts are required to limit their

review to the administrative record, it follows that, if upon review a district court concludes that

the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with

instructions to consider additional evidence unless no new evidence could produce a reasonable

conclusion permitting denial of the claim or remand would otherwise be a 'useless formality'")

(citations omitted); *see also Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 646 (2d Cir. 2002).

Plaintiff argues that, "[w]hile most ERISA cases should be decided on the basis of the

record developed by the insurance company, in cases where 'circumstances clearly establish that

additional evidence is necessary to conduct an adequate *de novo* review' additional evidence

should be received." Dkt. No. 108-2 at 1. As TIAA-CREF correctly points out, Plaintiff's

argument seeking admission of additional medical evidence overlooks a critical point: this is not a

*de novo* review. Dkt. No. 112 at 5. Based upon the above authority, the Court denies Plaintiff's

motion insofar as he asks the Court to consider evidence beyond the administrative record.

The subject of expanding the record bears further comment, however, as the Court would

still decline to consider the evidence under the de novo standard.

Even where a court reviews a fiduciary's determination *de novo*, the court is confined to

the record that was in front of the fiduciary unless the court "finds good cause to consider

additional evidence." *DeFelice v. American International Life Ins. Co.*, 112 F.3d 61, 66 (2d Cir.

1997); *see also Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (citation

omitted).

In this case, Plaintiff has failed to establish that there is good cause to expand the record. The primary thrust of Plaintiff's argument is that the Court should consider the medical records because they are relevant to the issue of the decedent's capacity to execute a POA on April 26, 2010. *See* Dkt. No. 108-2 at 1-2. However, the simple fact that evidence may be relevant to a case cannot, alone, be good cause to consider materials that were not provided to the fiduciary at the time it made its determination. *See, e.g., Locher v. Unum Life Ins. Co.*, 389 F.3d 288, 294-95 (2d Cir. 2004) (holding that good cause can be based on a fiduciary's conflict of interest); *Prabhakar v. Life Ins. Co. of N. America*, No. 09-CV-5530 (PKC), 2013 WL 4458728, *11 (E.D.N.Y. Aug. 16, 2013) (finding good cause to consider the plaintiff's personal copy of the plan documents where it did not contain notice of statute of limitations, but the copy in the administrative record contained such a copy).

In this case, Plaintiff has not even attempted to argue that TIAA-CREF was operating under a conflict of interest. Even assuming, as Plaintiff contends, that the medical records alone establish a lack of capacity, the Court does not find good cause to consider them as the record shows that Plaintiff never submitted the records to TIAA-CREF, despite having possession of them and despite having several months to submit the information prior to TIAA-CREF's decision to pay the sibling beneficiaries. Plaintiff was informed, months before any payment was made, that any challenge to TIAA-CREF's decision or the change in beneficiary would have to be in writing. *See* R. at 480-81. Despite this, Plaintiff never formally challenged the change in beneficiary.

Finally, the Court rejects Plaintiff's argument that discovery should be allowed because "there is a 'reasonable chance that the discovery sought will satisfy the good cause requirement.'" Dkt. No. 108-2 at 2-3. Essentially, Plaintiff argues that the Court should consider evidence

outside the administrative record to determine whether the change of beneficiary form actually reflects her intent. *See id.* at 2-3. This argument is flawed. The power of attorney form clearly stated Ms. Sanford's intent, which is supported by the fact that, in 2008, Ms. Sanford met with her TIAA-CREF Wealth Management Advisor Michael Graves where they discussed, among other things, changing the beneficiaries on her accounts. *See* R. at 382-83 (report of Michael Graves). The report submitted by Mr. Graves indicates that she requested information about removing her husband as a beneficiary at an April 30, 2008 meeting. *See id.* Mr. Graves told her that she could reduce his allotment to 50% but could not reduce it further without consent or divorce. *See id.* They met again on July 8, 2008 and discussed changing her beneficiaries. *See id.*

Based on the foregoing, the Court finds that Plaintiff has failed to meet his burden and that permitting discovery in this matter is unwarranted. Thus, even if the Court were to review the case *de novo*, it would decline to consider the medical records or order discovery.

### D. TIAA-CREF's motion for summary judgment

The first issue the Court must address is whether TIAA-CREF made a clear legal error in accepting the change in beneficiary, *i.e.*, whether designation of a beneficiary by a third party holding a power of attorney is permissible under the plan documents and ERISA. The Plan provides that "[e]ach participant may designate one or more Beneficiaries and contingent Beneficiaries in the manner acceptable to TIAA-CREF." Notably, it does not require any particular form of notice, such as a writing signed by the participant. *See, e.g., Metropolitan Life Ins. Co. v. Sullivan*, 96 F.3d 18 (2d Cir. 1996) (holding that a clause requiring that change in beneficiary be signed by the policyholder precludes attorney-in-fact from submitting change in beneficiary). Further, ERISA itself does not address the question. *See T.I.A.A.-C.R.E.F. v.*

*Bernardo*, 683 F. Supp. 2d 344, 353 (E.D. Pa. 2010). Thus, the Court finds that TIAA-CREF was not barred from accepting a beneficiary designation made under the authority of a POA, which specifically granted the authority to change the beneficiaries of the plan.

Second, the Court considers whether TIAA-CREF abused its discretion, *i.e.* was arbitrary and capricious, in accepting the designation of decedent's siblings on the basis of the change in beneficiaries form and the POA. Plaintiffs make a number of challenges in their moving papers to the propriety of TIAA-CREF's determination, none of which are supported by the administrative record or evidence submitted by Plaintiffs in support of the instant motions.

First, Plaintiff argues that the plan documents require spousal consent for any designation of a non-spousal beneficiary. *See* Dkt. No 104 at 17. Paragraph 6.01 of each Plan provides that "[t]he designation of a beneficiary other than a spouse (where applicable) shall require spousal consent in accordance with paragraph 6.02." R. at 28, 84. Paragraph 6.02 provides that "[t]he spouse shall be the participant's beneficiary for 50% of the value of each applicable investment account, whether or not designated as such, unless [there is spousal consent]." *See id.* Thus, by the terms of the Plan, spousal consent as referenced in paragraph 6.01 is only required where the designation of a non-spousal beneficiary would result in the spouse receiving less than 50% of the value of the participant's investment accounts.

Second, Plaintiff argues that the power of attorney required the Schneiders to act jointly. Therefore, the fact that only Gerd Schneider's initials appear next to the hand-written changes invalidates the change in beneficiaries. However, Plaintiff provides no authority for the principle that handwritten notations must be initialed by both attorneys-in fact, and the Court is aware of no case imposing such a requirement under New York state or federal common law. As the beneficiary change form was signed by both Gerd and Georgia Schneider, the Court finds that the

Schneiders acted jointly in accordance with the requirements of the power of attorney.

Third, contrary to Plaintiff's argument that the change of beneficiary form was not submitted to TIAA-CREF until nine days after Ms. Sanford's death, the record makes clear that TIAA-CREF received the change of beneficiary form from the Schneiders on April 27, 2010 at 9:49 a.m. *See* R. at 342. Ms. Sanford died later that day, at 1:30 p.m. *Id.* at 331.

Finally, Plaintiff argues that TIAA-CREF accepted the power of attorney in violation of the New York State General Obligation Law "GOL" § 5-1504, which sets forth the circumstances in which a third party must accept a properly executed statutory short form power of attorney. Assuming for the sake of argument that GOL § 5-1504 is applicable in an ERISA action, the Court finds that TIAA-CREF did not violate its terms. By its express terms, the statute simply prohibits a third party from refusing to honor a statutory short form power of attorney without reasonable cause. *See* N.Y. Gen. Obl. Law § 5-1504(1) ("No third party . . . shall refuse, without reasonable cause, to honor a statutory short form power of attorney."). It cannot be read to demand a refusal. Similarly, GOL § 5-1504(5) allows the third-party to request an affidavit from the agent attesting to the validity of the POA. In no way does it impose liability for not so requesting. In short, New York's statutory short form power of attorney statute provides no support for Plaintiffs' position.

Based on the foregoing, the Court finds that TIAA-CREF did not act in an arbitrary and capricious manner; and, therefore, the Court grants TIAA-CREF's motion for summary judgment.

Moreover, under the well-established "substantial compliance" doctrine, courts do not require absolute compliance with ERISA plan requirements in order to approve a change of beneficiaries, so long as the participant's intent to change the beneficiaries is clear. "'[P]ursuant to federal common law, an insured substantially complies with the change of beneficiary provisions

of an ERISA . . . policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.'" *Hartford Life Insurance Co. v. Einhorn*, 676 F. Supp. 2d 116, 136 (E.D.N.Y. 2009) (quoting *Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994)).

An example of lack of "substantial compliance" is set forth in *Prudential Insurance Company of America v. Schmid*, 337 F. Supp. 2d 325, 330 (D. Mass. 2004). In *Schmid*, the intended beneficiary presented the following evidence of a "substantial compliance" with regard to a beneficiary change. The decedent requested a change of beneficiary form from the carrier as well as information with respect to the named beneficiary. The potential new beneficiary — the second wife — contended that she heard the decedent say, on the phone to the carrier, that he intended to make her the beneficiary. The decedent did receive correspondence from the carrier which erroneously identified Patricia, the second wife as the present beneficiary. In fact, the beneficiary was Jessica, his daughter from his first marriage. The correspondence from the carrier also included a change of beneficiary form with instructions on how to effect the change. However, the decedent died without sending in the change of beneficiary form. Patricia, the second wife and the intended beneficiary, asserted that the decedent intended to change the beneficiary from daughter Jessica to her and was only prevented from doing so by the carrier's error in mistakenly advising him that Patricia was already the designated beneficiary. However, at the decedent's death, daughter Jessica remained the listed beneficiary.

In *Schmid* the court reviewed the applicable ERISA and federal common law, including the primary substantial compliance rule involving (1) intent and (2) the attempt to effectuate change by undertaking positive action. The court ruled that the first element of substantial

compliance; namely, the intent to make a change, was satisfied. However, the court determined that there was insufficient evidence as to the second factor for substantial compliance, in that there were no positive steps made to effectuate the change. *Id.* at 330. The court cited to similar cases where the decedent did not take enough positive steps to effectuate a change. In *American International Life Assurance Co. of New York v. Vazquez*, No. 02 Civ. 141(HB), 2003 WL 548738 (S.D.N.Y. Feb. 25, 2003), the decedent did nothing except express an intent to make an unspecific change and to obtain a change of beneficiary form. In *Aetna Life Ins. Co. v. Weatherford*, 924 F.2d 1057 (6th Cir. 1991), the decedent completed and signed a change of beneficiary form but never mailed it. The completion of the form was held to be merely an "unexecuted intention" and did not meet the standard of substantial compliance.

In *Davis v. Combes*, 294 F.3d 931, 935 (7th Cir. 2002), the named insured attempted to complete a change of beneficiary form in favor of her sister, Linda Davis. The effectiveness of that change of beneficiary form was at issue; especially in view of the fact that the decedent had previously designated her husband as a recipient of 20% and her daughter as a recipient of 80% of the policy. With regard to the policy at issue, the decedent filled out — with her own handwriting — the form provided to her. On that form she provided all the necessary information, including her designation of Linda as the new beneficiary, and September 1, 1996 as the effective date. However, she did not sign and date the form on the line provided for that purpose. This failure to sign and date the form on the line provided appeared to be a technical violation of both the sponsor and the insurance carrier requirements. In fact, the policy provided that a beneficiary designation "will be effective on the date the insured signs it." Ruling that "substance rather than form should be the basis of . . . [such] decisions", the Seventh Circuit ruled that "[w]e see no reason not to apply the substantial compliance notion to this issue[.]" *Id.* at 941. Finding that the

change of beneficiary form substantially complied with the policy, the court held as follows:

> The fact that a policy holder made a careless error should not
> conclusively determine whether her efforts at naming a beneficiary
> were effective for purposes of the policy and the statute.
> Carelessness suggests a lack of attention to detail, but it tells us
> very little about whether the policy holder formed the necessary
> intent to name a beneficiary and whether she took sufficient steps
> consistent with that intent to implement her decision.  We are aware
> that there will be situations in which a failure to sign and date a
> beneficiary designation may cast significant doubt on whether the
> policy holder actually decided to go through with the change.  But it
> is equally true that there are other cases in which the evidence will
> unequivocally establish that the policy holder intended to make the
> new beneficiary designation and took positive action to effectuate
> that intent.  *Cf. Becker v. Montgomery*, 532 U.S. 757, 121 S. Ct.
> 1801, 1808, 149 L. Ed. 2d 983 (2001) (holding that failure to sign
> notice of appeal should not be fatal where "no genuine doubt exists
> about who is appealing, from what judgment, to which appellate
> court").

*Davis*, 294 F.3d at 942.

The *Davis* court also cited to an extreme case which vividly demonstrated that intent was

an important factor in these substantial compliance decisions.  In *Criscuolo v. United States*, 239

F.2d 280 (7th Cir. 1956), a dying soldier in the hospital gave a staff person a note indicating that

he wanted to change his beneficiary to make his wife the beneficiary of his policy.  The staff

person obtained and completed a change of beneficiary form; but the soldier died before he was

able to sign or submit the form.  The Court found that, although mere intent is not enough, in this

unique case, the intent, desire and purpose of the soldier should be given effect by the Courts.

Again, the Court ruled that "substance, rather than form should be the basis of . . . [such]

decisions."  *Id.* at 282.

In the present matter, the Court finds that, even if Ms. Sanford and TIAA-CREF had not

strictly complied with the terms of the plans, the substantial compliance doctrine would apply.

Ms. Sanford repeatedly made her intentions clear in this matter, and her intentions should be

given effect. The power of attorney form clearly stated Ms. Sanford's intent, which is supported by the fact that, in 2008, Ms. Sanford met with her TIAA-CREF Wealth Management Advisor Michael Graves where they discussed, among other things, changing the beneficiaries on her accounts. *See* R. at 382-83 (report of Michael Graves). The report submitted by Mr. Graves indicates that she requested information about removing her husband as a beneficiary at an April 30, 2008 meeting. *See id.* Mr. Graves told her that she could reduce his allotment to 50% but could not reduce it further without consent or divorce. *See id.* They met again on July 8, 2008 and discussed changing her beneficiaries. *See id.*

Further, Plaintiff was told that any form objection to the change in beneficiaries must be made in writing, several months before any action was taken. In September of 2010, when he failed to make such a written objection, TIAA-CREF carried out Ms. Sanford's wishes, as made clear through her change in beneficiary form. Such actions cannot be considered arbitrary and capricious.

Based on the foregoing, the Court finds that, in the alternative, Ms. Sanford substantially complied with the applicable plan provisions and law; and, therefore, TIAA-CREF did not abuse its discretion. Since the Court has granted TIAA-CREF's motion for summary judgment as to Plaintiff's claims against it, the Court denies Plaintiff's motion for summary judgment as it applies to TIAA-CREF.


**E.     Plaintiff's state-law claims/the Schneider's motion to dismiss**

Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809

(2d Cir. 1979) (citation omitted). The Second Circuit has held that "'if [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).

Since the Court has dismissed all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over their state-law claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Schneider's motion to dismiss is denied as moot.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to admit additional evidence into the administrative record and to conduct discovery (Dkt. No. 108) is **DENIED**; and the Court further

**ORDERS** that Defendant TIAA-CREF's motion for summary judgment (Dkt. No. 99) is **GRANTED** and that Plaintiff's cross-motion for summary judgment (Dkt. No. 123) is **DENIED**; and the Court further

**ORDERS** that the Plaintiffs' complaint as against the Defendant TIAA-CREF is **DISMISSED with prejudice**; and the Court further

**ORDERS** that it declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against the Defendants Gerd Schneider and Georgia Schneider and that Plaintiff's state-law claims against Defendants Gerd Schneider and Georgia Schneider are **DISMISSED without prejudice**; and the Court further

**ORDERS** that Defendants Gerd Schneider and Georgia Schneider's motion to dismiss

(Dkt. No. 83) is **DENIED as moot**; and the Court further

      **ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the

Court further

      **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 31, 2014
        Albany, New York

Mae A. D'Agostino
U.S. District Judge